147 N.J. Super. 263 (1977)
371 A.2d 111
ABEL HOLDING COMPANY, INC., PLAINTIFF-RESPONDENT,
v.
AMERICAN DISTRICT TELEGRAPH COMPANY AND GRINNELL COMPANY, DEFENDANTS, AND NEW JERSEY BELL TELEPHONE COMPANY, DEFENDANT-APPELLANT. ABEL HOLDING COMPANY, INC., PLAINTIFF-APPELLANT,
v.
AMERICAN DISTRICT TELEGRAPH COMPANY, NEW JERSEY BELL TELEPHONE COMPANY AND GRINNELL COMPANY, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1976.
Reargued January 10, 1977.
Decided February 4, 1977.
*265 Before Judges BISCHOFF, MORGAN and RIZZI.
Mr. James Cooper argued the cause for New Jersey Bell Telephone Company (Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys; Mr. Lewis B. April, of counsel and on the brief; Ms. Mary M. Reiss on the brief).
Mr. Franklin Sachs argued the cause for Abel Holding Co., Inc. (Messrs. Podvey & Sachs, attorneys; Mr. Henry J. Catenacci on the brief).
*266 Mr. Burtis W. Horner argued the cause for American District Telegraph Company (Messrs. Stryker, Tams & Dill, attorneys; Mr. Stephen D. Cuyler on the brief).
Messrs. Cole, Koury, Cole & Tighe, attorneys for Grinnell Company, Inc., did not participate in the appeal.
PER CURIAM.
Plaintiff Abel Holding Company (Abel) filed a complaint April 6, 1972 seeking recovery for property damage and loss of profits sustained when a fire occurring December 27, 1969 extensively damaged an amusement center known as "Steel Pier" in Atlantic City.
Defendants are the American District Telegraph Company (ADT), New Jersey Bell Telephone Company (Bell), and Grinnell Company, Inc. (Grinnell).
Following extensive discovery, a pretrial conference was held. Thereafter various motions for summary judgment, dismissal and other relief were argued by the parties. In ruling on these motions the trial judge filed an opinion, reported at 138 N.J. Super. 137 (Law Div. 1975). Additional motions were argued before the same judge thereafter and disposed of in an unreported opinion dated March 3, 1976. The court's rulings on all motions were incorporated in an order dated April 27, 1976. Abel and Bell both appeal, pursuant to leave granted, from portions of that order.
The reported opinion sets forth in detail the relationship of the parties as well as the factual and legal theories relied upon by both plaintiff and defendants, and they will not be restated here. It is sufficient for our present purposes to note the following facts.
Plaintiff, the owner of the fire-damaged amusement pier, contracted in 1955 with ADT for the installation of a fire alarm system. The contract between the parties was on a printed form and was renewed periodically. The last executed contract, in effect at the time of the fire, was dated May 15, 1969. The alarm system installed by ADT was *267 connected to the fire department by telephone lines owned by Bell. It is alleged that when the fire occurred the alarm system failed to work as a result of a defect in the alarm system and in the telephone line connections.
We consider, first, the issues raised by plaintiff's appeal.

I
The contract between Abel and ADT contained a provision limiting the liability of ADT to the greater of 10% of the annual service charge or $250. (This clause is set out in full in the reported opinion, 138 N.J. Super. at 144.)
ADT moved for an order limiting plaintiff's recovery to 10% of the annual service charge or $250, whichever is greater. The motion was granted and plaintiff appeals.
We affirm the action of the trial judge in limiting the liability of ADT, essentially for the reasons expressed in the reported opinion at 145 to 154.

II
Plaintiff moved for summary judgment on the issue of liability against both defendants Bell and ADT, and appeals from the denial of both motions.
We affirm the denial, substantially for the reasons expressed by the trial judge in both the reported opinion and the unreported letter opinion.
We turn to a consideration of the issues raised by Bell's appeal.

III
Bell first contends that the tariffs which it is required to file with the PUC have the force of law and that they completely define the duty owed by Bell to all persons, including plaintiff, even though plaintiff is not a customer or party to the service contract existing between Bell and *268 ADT. Bell argues that the filed tariffs, when properly interpreted and applied, limit the liability of Bell to plaintiff insofar as plaintiff's action against Bell is based on negligence, breach of warranty and strict liability in tort.
Public utilities are required by statute (N.J.S.A. 48: 2-21) and regulations promulgated thereunder (Administrative Order 14:280, now N.J.A.C. 14:11-7.1 et seq.) to file tariffs setting forth complete schedules and charges for all classifications of service provided. Pursuant to this requirement Bell filed a tariff which provided in part:
In view of the fact that the customer has exclusive control of his communications over the facilities furnished him by the Telephone Company and of the other uses for which facilities may be furnished him by the Telephone Company, and because of unavoidableness of errors incident to the services and to the use of such facilities of the Telephone Company are subject to the terms, conditions and limitations herein specified.
The liability of the Telephone Company for damages arising out of mistakes, omissions, interruptions, delays or errors or defects in transmission, occurring in the course of furnishing service, channels, directory listings, for which a specific charge is made, or other facilities and not caused by negligence of the customer or of the Telephone Company in failing to maintain proper standards of maintenance, operation and practices and to exercise reasonable supervision, shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, or error or defect in transmission occurs. The guarantee in connection with semipublic service shall also be suspended for the time during which such interruption continues.
Bell argues that this tariff, and the limitation of liability clause contained therein, is binding alike on the customer and third parties.
A tariff was recently defined in the case of In re Application of Saddle River, 71 N.J. 14 (1976), as follows:
A tariff is a published schedule of rates, filed by a public utility, and thereafter, in the absence of successful challenge, applicable equally to all customers. Its application may or may not have been *269 preceded by a rate-making hearing. As our Appellate Division has recently pointed out, such a tariff is not a mere contract. It is the law, and its provisions are binding on a customer whether he knows of them or not. Essex County Welfare Board v. New Jersey Bell Telephone Co., 126 N.J. Super. 417, 421-22 (App. Div. 1974). [at 29]
Limitation of liability clauses contained in filed tariffs have been upheld in various jurisdictions. Most often such cases involve claims based upon injuries due to allegedly negligent omission of plaintiff's name and number from the phone directory (see, e.g., McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (2 Cir.1954); Bird v. Chesapeake and Potomac Tel. Co., 185 A.2d 917 (D.C. App. 1962); see also, cases collected in Annotation, 92 A.L.R.2d 917, § 9 (1963)), or for failure to provide adequate phone service (see, e.g. Waters v. Pacific Tel. Co., 12 Cal.3d 1, 114 Cal. Rptr. 753, 523 P.2d 1161 (Sup. Ct. 1974); Holman v. Southwestern Bell Telephone Co., 358 F. Supp. 727 (D. Kan. 1973); Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., 279 F. Supp. 712 (W.D. Okla. 1967)). However, these cases involve disputes between the utility and the customer. Counsel has not referred us to any case where a clause in a filed tariff, limiting liability, was held binding upon a stranger to the relationship between the utility and the customer, and our own research has failed to disclose any.
There is no express statement in Bell's filed tariff indicating that it was intended to bind third parties. In the absence of an express statement limiting liability, clauses or provisions in contracts purporting to limit liability are strictly construed. Midland Carpet Corp. v. Franklin Associated Properties, 90 N.J. Super. 42, 46 (App. Div. 1966). The same general principle should be applicable to filed tariffs so that where, as here, the plain language of the limitation of liability clause does not specifically apply to the situation involved, it will not be construed or applied so as to limit the right of one not a party to the contract to recover against one who is a party to the contract *270 for the latter's tortious conduct. Carbone v. Cortlandt Realty Corp., 58 N.J. 366, 368 (1971); Horelick v. Pennsylvania R. Co., 13 N.J. 349, 358 (1953).
Moreover, Bell's contention that we should give full force and effect to the limitation of liability clause contained in the filed tariff against plaintiff conflicts with the general principle that:
[W]here a party to the agreement is under a public duty entailing the exercise of care, he may not relieve himself of liability for negligence through an exculpatory clause; illustrative are common carriers, public utilities, and the like. See Horelick v. Pennsylvania R. Co., 13 N.J. 349, 357 (1953); 6A Corbin, Contracts, § 1472 (1962); cf. McCarthy v. National Association for Stock Car Auto Racing, Inc., 48 N.J. 539 (1967). [Mayfair Fabrics v. Henley, 48 N.J. 483 (1967)]
Still another and more cogent reason exists for denying Bell's motion seeking an order limiting its liability to plaintiff under the filed tariffs. The filed tariff expressly conditions the effectiveness of the limitation of liability clause to situations "not caused by negligence of * * * the telephone company in failing to maintain proper standards of maintenance, operation and practices and to exercise reasonable supervision."
Plaintiff's allegations of Bell's negligence, breach of warranty and strict liability in tort made in the complaint are now accompanied by a voluminous discovery record. This record contains complex factual assertions in support of the allegations made in the complaint, and it is clear that the entry of summary judgment at this stage of the proceedings would be inappropriate, Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954). We affirm the judgment denying Bell's motion for a summary judgment limiting its liability to plaintiff.

IV
Bell contends that the trial judge erred in denying its motion for a dismissal of plaintiff's complaint, arguing that *271 it "owes no duty of reasonable care to persons other than its customers or subscribers" and that since Abel is neither a customer nor subscriber, it cannot maintain this action against Bell. This contention is raised for the first time on this appeal.
In support thereof, Bell cites H and G Metals, Inc. v. Wells Fargo Alarm Systems, 45 A.D.2d 490, 359 N.Y.S.2d 797 (App. Div. 1974), and other out-of-state cases[1]. No point will be served by our attempting to distinguish or analyze the authorities cited. We are not bound by such cases and, assuming that they support Bell's position, we decline to follow them or to adopt the reasoning expressed therein.
The thrust of Bell's argument is that while its customer (ADT) could maintain an action against Bell for damages under its contract, a noncustomer such as plaintiff (Abel) is barred from maintaining an action. Defendant's position is founded on an erroneous premise. Plaintiff's cause of action is not predicated on a breach of the contract existing between ADT and Bell. Rather, it is based on the alleged tortious conduct of Bell. Bacak v. Hogya, 4 N.J. 417, 422 (1950). The alleged tortious nature of the conduct of Bell does not become less actionable because it may also be the basis of a breach of contract action by ADT against Bell. Bell has a duty to exercise due care in its undertakings to avoid damage or injury to all within the zone of hazard created by its own activity. Miller v. Muscarelle, 67 N.J. Super. 305, 327 (App. Div. 1961).
*272 We think the proper measure of Bell's duty is expressed in Restatement, Torts 2d, § 324A (1965):
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
In Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370 (Law Div. 1972), this section was adopted as a proper statement of the duty owed to third persons for the negligent performance of an undertaking having its genesis in contract. In that case the owner of some goods instituted an action against his bailee and the detective agency that was under a contractual duty with the bailee to provide security guards. Plaintiff's goods were stolen and the court held that plaintiff's complaint against the detective agency set forth a prima facie case sufficient to defeat a motion for summary judgment.
We believe the same principle should be applied to this case. Hence, the trial judge did not err in failing to dismiss plaintiff's complaint against Bell.

V
Bell contends that the limitation of liability clause in the contract between ADT and plaintiff (discussed and referred to in Part I hereof) inures to its benefit; that its liability is limited to the same extent as ADT, and that the judge erred in denying its motion to declare that its liability was thus limited. Further, Bell argues that the judge erred in not dismissing plaintiff's claim for loss of profits because under paragraph D of the contract between plaintiff and ADT, plaintiff was required to purchase use and occupancy insurance which, it contends, bars it from *273 asserting any claim for loss of profits. These arguments are bottomed in part on the provision of the contract reading:
The Department or other organization to which the connection is made may invoke the provisions hereof against any claims by the Subscriber due to any failure of such Department or organization.
Bell argues that it is the "other organization to which the connection is made."
Judge Horn, in rejecting this contention, said:
In the context of the entire agreement it is clear and unambiguous that the "connection" referred to in the pertinent clause is the "system" connection and not individual component connections within the system. "Department or other organization" means the fire or police department or similar organizations as they may be known in various political districts. As stated by ADT, the language would support Telephone Co.'s position if it read: "Department or other organization through which the connection is made." In any event, the language does not support Telephone Co's contention on this point.
We agree with this construction of the clause.
A prior portion of the contract notes that the "Direct-Connected Protective Signaling system" would be "connected to Atlantic City Fire Department * * *." Clearly, then, the connection between the system and the fire department was the connection being referred to in the limitation of liability clause, and the third party entitled to the benefit thereof could only have been intended to be the fire department. The draftsman obviously conceived the system as including the Bell Telephone lines, not as being connected thereto.
Bell's other arguments under this point cannot be supported by either logic or precedent, and the action of the trial judge in denying Bell's motion to hold that it is entitled to the benefit of the limitation of liability clause in the contract between plaintiff and ADT is affirmed.
The order enterd below, on all issues raised by this appeal, is affirmed.
NOTES
[1] The other out-of-state cases cited by Bell as support for this proposition are: Pollock v. New England Tel. and Tel. Co., 289 Mass. 255, 184 N.E. 133 (Sup. Jud. Ct. 1935); Mentzer v. New England Tel. and Tel. Co., 276 Mass. 478, 177 N.E. 549 (Sup. Jud. Ct. 1931); Mortenson v. New York Tel. Co., 32 N.Y.S.2d 488, mod. on other gds., 179 Misc. 289, 38 N.Y.S. 2d 949 (Sup. Ct. 1942); De Foe v. Potomac Electric Power Co., 123 A.2d 920 (D.C. App. 1956).